IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TIMOTHY A. GAMEL,**

      **Plaintiff,**

vs.                                                      No. CIV 05-856 WDS

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on May 9, 2006. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [document # 11] and Memorandum Brief [document # 12], Defendant's Response [document # 13], Plaintiff's Reply [document # 14], the administrative record and applicable law, finds that Plaintiff's Motion should be **DENIED IN PART** and **GRANTED IN PART,** and that this matter is remanded to the Commissioner of Social Security for further proceedings consistent with the Memorandum Opinion and Order.

### I. Background

Plaintiff, who was born on July 13, 1958, worked as a bus driver, cab driver, nurse's aid, and laborer before the onset of his alleged disability. Tr. 81-82. Plaintiff applied to the Social Security Administration for benefits on April 28, 2003. Tr. 64-66. He alleged that he became disabled on February 28, 2003. Tr. 64. Plaintiff's application was denied at the initial level, Tr. 35, and at the

reconsideration level. Tr. 36-40. Plaintiff appealed by filing a request for a hearing by an administrative law judge ("ALJ") on November 13, 2003. Tr. 53-54. The hearing before the ALJ was held on April 29, 2004, at which Plaintiff appeared represented by an attorney. Tr. 371-408. Plaintiff alleged that he was disabled as a result of depression, right knee pain (torn meniscus), and borderline intellectual functioning. Tr. 377, 381, 383. In an opinion dated January 4, 2005, the ALJ rendered an unfavorable decision, finding that Plaintiff was not disabled. Tr. 14-21. Plaintiff then filed a request for review with the Appeals Council on February 15, 2005. Tr. 362. The Appeals Council denied Plaintiff's request for review on June 22, 2005, Tr. 7-9, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On October 21, 2005, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, [document # 2, 7] this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner

establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Tr. 16.  The ALJ found at step two that Plaintiff had the severe impairments of right knee medial meniscus tear, mild posterior protrusion of L5-S1 disk without significant spinal or foraminal stenosis, learning disability, borderline intellectual functioning, and depression. Tr. 16.  The ALJ found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any of the Listings.  Tr. 16.  At step four, the ALJ concluded that Plaintiff had the following residual functional capacity:  lift and carry 10 pounds frequently and 20 pounds occasionally; alternate between sitting and standing with standing for no more than 20 minutes at a time for no more than 2 hours during an 8 hour day and sitting for no more than one hour at a time; occasionally stoop, kneel, crawl, balance, and crouch with no carrying on stairs or ramps; no use of ladders, ropes, or scaffolds, or anything with foot controls; and work limited to simple, routine repetitive work that does not require close attention to detail and involves little use of independent judgment.  Tr. 18.  Given the RFC assessment, the ALJ found that Plaintiff could not perform his past relevant work.  Tr. 18.  At step five the ALJ concluded that there was a significant number of jobs in the national economy that Plaintiff could perform, based on the above-noted limitations and relevant vocational factors.  Tr. 19.  Accordingly, the ALJ concluded that Plaintiff was not disabled.  Tr. 19

Plaintiff contends that the ALJ erred in determining that Plaintiff had a limited education when

the evidence showed he was illiterate, in failing to pose an accurate and complete hypothetical question to the Vocational Expert, and in finding the Vocational Expert's testimony credible.

### IV.  Discussion

1.  <u>Whether the ALJ Erred in Finding that Plaintiff Had a Limited Education, Rather Than Finding Him Illiterate.</u>

Plaintiff first argues that the ALJ erred by finding that Plaintiff had a limited education rather than finding that he was illiterate. If Plaintiff were illiterate, and limited to sedentary work, Rule 201.17 of the Medical-Vocational Guidelines would direct a finding of disabled given Plaintiff's age (46) and past work history, from which Plaintiff has no transferable skills. Plaintiff argues that the ALJ failed to fully develop the issue of his purported illiteracy, and erroneously characterized Plaintiff as having a "limited" education instead of a "marginal" education.

As an initial matter, the Court finds that the ALJ adequately developed the record concerning Plaintiff's academic abilities and limitations. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). A psychiatrist assessed Plaintiff's IQ and diagnosed a learning disability. Ms. Linda Kinzler-Norheim of the Vocational Rehabilitation Consulting and Services testified at the hearing, in the presence of the VE, regarding Plaintiff's level of performance in reading and math, and the improvement he had made in both areas. Plaintiff testified that he had attended school through the ninth grade, although many of his classes had been special education. Furthermore, Plaintiff testified regarding his difficulty making change while driving his taxi. There was no evidence in the record that Plaintiff's lack of educational achievement had proved to be an obstacle in his previous employment. To the contrary, Plaintiff testified that his major problem was the pain in his right knee. Plaintiff's suggestion that the ALJ should have asked him to write a

sentence or two is not well taken.

Plaintiff next asserts that the ALJ's characterization of his education as "limited" (Tr. 20) instead of "marginal" justifies remand. 20 C.F.R. §1564 contains the following definitions:

> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

In this instance the Plaintiff attended school through ninth grade and successfully performed a number of semi-skilled jobs, which would support a description of his education as "limited." However, his academic achievement in reading and math qualifies as "marginal."

The Court first notes that while there is evidence to support a finding that Plaintiff has a marginal or limited education, none of the evidence in the file supports Plaintiff's contention that he should be found to be "illiterate." Plaintiff's argument in that regard is not well taken. Furthermore, the Vocational Expert in this case was not told that Plaintiff had a "limited" education. To the contrary, the VE was present when Ms. Kinzler-Norheim testified at the hearing regarding Plaintiff's level of achievement in reading in math. Tr. 400. Ms. Kinzler-Nordheim also testified to Plaintiff's learning disability and borderline range of intelligence. Tr. 400. The VE was also aware of Plaintiff's past relevant work, which showed that Plaintiff had successfully performed several semi-skilled jobs. Tr. 161. In his hypothetical to the VE, the ALJ characterized Plaintiff's educational ability as "reads and does math at the medium grade school levels." The Court finds the ALJ's description to be accurate and supported by substantial evidence. Plaintiff's arguments to the contrary are not well

6

taken.

2.     Whether the ALJ Erred in Posing an Inaccurate and Incomplete Hypothetical Question to the Vocational Expert.

A. Plaintiff's Age

Plaintiff first argues that the ALJ misrepresented his age to the Vocational Expert. In his hypothetical question to the VE at the hearing, the ALJ posited "a man 44 to 45 years of age with education and work experience like the Claimant." Tr. 404. In his opinion, the ALJ described the Plaintiff as a "46-year-old individual." Tr. 15. Plaintiff suggests that the ALJ misrepresented Plaintiff's age to the VE at the hearing. Plaintiff's point is not well taken. Plaintiff was 45 years old at the April 29, 2004 hearing, and 46 years old at the time of the ALJ's January 4, 2005 opinion. At the start of the hearing, in the presence of the VE, the ALJ asked Plaintiff his birthday (July 13, 1958) and his age (45). Tr. 375. Contrary to Plaintiff's assertion, the ALJ did not improperly relate Plaintiff's age to the VE. Plaintiff's position is not well taken.

B. Plaintiff's Intellectual and Psychological Limitations

Plaintiff contends that the ALJ failed to properly describe Plaintiff's psychological limitations in his hypothetical question to the VE. Plaintiff argues that the ALJ ignored some of the findings of the state agency consultants, but did not explain his reasons for doing so, contrary to Social Security Ruling 96-6p. Plaintiff references evidence showing moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to set realistic goals or make plans independently of others and difficulties in maintaining concentration, persistence or pace. Plaintiff suggests that remand is in order because the ALJ rejected the findings of the consultant, but failed

7

to discuss his reasons for doing so, contrary to *Johnson-Winborn v. Apfel*, 106 F. Supp.2d 1144 (D. Kan. 2000).

The limitations discussed by Plaintiff are found on two exhibits, both Mental Residual Functional Capacity Assessments, one marked Exhibit 4F (February 14, 2002[1], Tr. 194-197) and the other Exhibit 9F (May 21, 2003 and October 25, 2003, Tr. 231-234). The ALJ references exhibit 9F in his opinion, Tr. 17, but admittedly does not discuss the particular moderate limitations referenced by Plaintiff. However, the Court does not accept Plaintiff's contention that the ALJ ignored the limitations. To the contrary, his RFC determination, which was incorporated into his hypothetical to the VE, (Tr. 404) includes limitations consistent with those found by the state agency consultant in Exhibit 9F. Specifically, the ALJ found that Plaintiff was limited to "simple, routine, repetitive work that does not require close attention to detail and involves little use of independent judgment." Tr. 18, 404. Such work does not require the ability to carry out detailed instructions, does not require the ability to maintain attention and concentration for extended periods, or the ability to understand and remember detailed instructions. Hence, it is apparent that the ALJ accepted the state agency findings (Tr. 231) that Plaintiff was moderately limited in these areas. Similarly, the ALJ's conclusion that Plaintiff could only perform work that involves "little use of independent judgment" is consistent with the finding (Tr. 232) that Plaintiff is moderately limited in his ability to set realistic goals or make plans independently of others. The Court finds that the ALJ did not ignore the findings of the state agency consultants, that his RFC determination was supported by substatial evidence, and that his hypothetical to the VE adequately reflected Plaintiff's vocational limitations. Plaintiff's position is not well taken.

---

[1]This exhibit appears to be from Plaintiff's earlier disability claim, filed in 2001.

3.      Whether the ALJ Erred in Finding the Vocational Expert's Testimony Credible.

Plaintiff's final argument is that the VE testified that Plaintiff could perform jobs that were, in fact, beyond his capabilities. The VE testified as follows:

> Well, with that hypothetical I would identify jobs that would fall in the category of small parts and bench assembly type occupations. You have a number of different titles there. You have assemblers of eyeglasses, lens polishers, that type of light assembly. And those are sedentary, unskilled occupation and they just require, you know, math and reading development and basic--what's described as a one which is elementary level of that.

The VE did not identify any particular job by DOT number. Plaintiff suggests that the VE most likely was referring to "Multifocal-lens Assembler" (DOT 713.684-034) and "Eyeglass Frame Polisher" (DOT 713.684-038), and argues that the demands of these jobs exceed his capabilities. The Commissioner argues that there are other jobs in the optical goods industry which are suited to Plaintiff's RFC. Resolution of the above dispute is unnecessary, as it is uncontroverted that the VE offered no testimony whatsoever about the number of jobs available in the state or national economy, whether for "bench assembly type occupations" in general or, more specifically, "assemblers of eyeglasses" or "lens polishers." In his opinion, the ALJ states that Plaintiff could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy, but the Court has no evidence in the record upon which to base a review of this particular conclusion.

Accordingly, the Court orders that this matter be remanded for further proceedings on this issue. The VE should be asked to identify particular jobs, by D.O.T. code, and the VE should explain how the vocational demands of any particular job are in alignment with Plaintiff's RFC. The VE should also identify the number of jobs available, locally and nationally, for any particular job which he believes Plaintiff is suited to perform.

9

## V.  Conclusion and Summary

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [document #11] is  **DENIED IN PART,** and **GRANTED IN PART,** and this matter is remanded to the Commissioner of Social Security for further proceedings consistent with the Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE**